## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| DAWN COULTER and TRACY JOHNSON, each individually and on behalf of all others similarly situated,<br><br>v.<br><br>VILLA HEALTHCARE MANAGEMENT, INC. | **Case No. 1:22-cv-01970**<br>FLSA Collective Action<br>FED. R. CIV. P. 23 Class Action |

### PLAINTIFFS' ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1.     Like many other companies across the United States, Villa's timekeeping and payroll systems were affected by the hack of Kronos in 2021.

2.     That hack led to problems in timekeeping and payroll throughout Villa's organization.

3.     As a result, Villa's workers who were not exempt from overtime under federal and state law were not paid for all hours worked and/or were not paid their proper overtime premium for all overtime hours worked after the onset of the Kronos hack.

4.     Dawn Coulter and Tracy Johnson are two such workers for Villa.

5.     Villa could have easily implemented a system to accurately record time and properly pay non-exempt hourly and salaried employees until issues related to the hack were resolved.

6.     But it didn't. Instead, Villa used prior pay periods or reduced payroll estimates to avoid paying wages and proper overtime to these non-exempt hourly and salaried employees.

7. Villa pushed the cost of the Kronos hack onto the most economically vulnerable people in its workforce.

8. Villa made the economic burden of the Kronos hack fall on front-line workers—average Americans—who rely on the full and timely payment of their wages to make ends meet.

9. Villa's failure to pay wages, including proper overtime, for all hours worked violates the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*

10. Villa's failure to pay wages, including proper overtime, for all hours worked also violates state laws, including the Illinois Minimum Wage Law (IMWL), 820 ILCS § 105/1 *et seq.*, the Illinois Wage Payment and Collection Act (IWPCA), 820 ILCS § 115/1 *et seq.*, and the Mighigan Workforce Opportunity Wage Act (MWOWA), MICH. COMP. LAWS § 408.411 *et seq.*

11. Coulter and Johnson bring this lawsuit to recover these unpaid overtime wages and other damages owed by Villa to them and Villa's other non-overtime-exempt workers, who were the ultimate victims of not just the Kronos hack, but Villa's decision to make its own non-exempt employees workers bear the economic burden for the hack.

12. This action seeks to recover the unpaid wages and other damages owed by Villa to all these workers, along with the penalties, interest, and other remedies provided by federal, Illinois, and Michigan law.

### JURISDICTION & VENUE

13. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.     The Court has supplemental jurisdiction over any state law sub-classes pursuant to 28 U.S.C. § 1367.

15.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Villa is headquartered in this District.

## PARTIES

16.     **Plaintiff Dawn Coulter** is a natural person.

17.     Coulter was, at all relevant times, an employee of Villa.

18.     Coulter has worked for Villa since June 2019.

19.     Coulter worked for Villa in Illinois.

20.     **Plaintiff Tracy Johnson** is a natural person.

21.     Johnson was, at all relevant times, an employee of Villa.

22.     Johnson has worked for Villa since June 2019.

23.     Johnson worked for Villa in Michigan.

24.     Coulter and Johnson represent at least three groups of similarly situated workers.

25.     Coulter and Johnson represent a collective of similarly situated workers under the FLSA pursuant to 29 U.S.C. § 216(b). This "FLSA Collective" is defined as:

> **All current or former non-exempt employees of Villa who worked in the United States at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

26.     Coulter represents a class of similarly situated workers under Illinois law pursuant to Federal Rule of Civil Procedure 23. This "Illinois Class" is defined as:

> **All current or former non-exempt employees of Villa who worked in Illinois at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

27.     Johnson represents a class of similarly situated workers under Michigan law pursuant to Federal Rule of Civil Procedure 23. This "Michigan Class" is defined as:

> **All current or former non-exempt employees of Villa who worked in Michigan at any time since the onset of the Kronos ransomware attack, on or about December 11, 2021, to the present.**

28.     Throughout this Complaint, the FLSA Collective, Illinois Class, and Michigan Class members are also referred to jointly as the "Similarly Situated Workers."

29.     **Defendant Villa Healthcare Management, Inc. ("Villa")** is a domestic corporation.

30.     Villa is headquartered in this District.

31.     Villa may be served by service upon its registered agent, **Illinois Corporation Service Company, 801 Adlai Stevenson Dr., Springfield, IL 62703**, or by any other method allowed by law.

32.     The facilities operated by Villa Healthcare include, but are not limited to:

- Villa at Windsor Park
- Villa at Palos Heights
- Villa at Lincoln Park
- Villa at Middleton Village
- Villa at Bradley Estates
- Villa at West Branch
- Villa at Rose City
- Villa at the Bay
- Villa at Traverse Point
- Villa at Great Lakes Crossing
- Villa at the Park
- Villa at City Center
- Villa at Green Lake Estates
- Villa at Parkridge
- Villa at Silverbell Estates
- Ambassador, a Villa Center
- Imperial at Villa Center
- Regency, a Villa Center
- Father Murray, a Villa Center

- St. Joseph's, a Villa Center
- Westland, a Villa Center
- Brookview, a Villa Center
- Villa at Bryn Mawr
- Galtier, a Villa Center
- New Brighton, a Villa Center
- Villa at Osseo
- Park Health, a Villa Center
- Richfield, a Villa Center
- Robbinsdale, a Villa Center
- Rose of Sharon, a Villa Center
- Villa at St. Louis Park
- Cedars at St. Louis Park, a Villa Center
- Spring Meadows, a Villa Center

33.     At all relevant times, Villa operated as an alter ego of its facilities.

34.     At all relevant times, Villa's facilities operated as its alter egos.

35.     At all relevant times, Villa and its facilities operated as alter egos of one another.

36.     At all relevant times, Villa exerted operational control over each of these facilities and any of its other facilites.

37.     At all relevant times, Villa had the authority to set pay practices at each of these facilities and any of its other facilites.

38.     At all relevant times, Villa substantially controlled the terms and conditions of employment for workers at each of these facilities and any of its other facilites.

39.     At all relevant times, Villa had a common control and management of labor relations regarding employees at each of these facilities and any of its other facilites.

## COVERAGE UNDER THE FLSA

40.     At all relevant times, Villa was an employer of Coulter and Johnson within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

41. At all relevant times, Villa was and is an employer of the FLSA Collective Members within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

42. At all relevant times, Villa was and is part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

43. During at least the last three years, Villa has had gross annual sales in excess of $500,000.

44. At all relevant times, Villa was and is part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. § 203(s)(1).

45. Villa employs many workers, including Coulter and Johnson, who are engaged in commerce or in the production of goods for commerce and/or who handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce by any person.

46. The goods and materials handled, sold, or otherwise worked on by Coulter, Johnson, and other employees of Villa and that have been moved in interstate commerce include, but are not limited to, medical equipment and supplies, and telephones, computers, and office supplies and equipment.

## FACTS

47. Villa operates a network of nursing and rehabilitation centers.

48. Many of Villa's employees are non-exempt hourly and salaried workers.

49. Since at least 2021, Villa has used timekeeping software and hardware operated and maintained by Kronos.

50. On or about December 11, 2021, Kronos was hacked with ransomware.

51.     The Kronos hack interfered with the ability of its customers, including Villa, to use Kronos's software and hardware to track hours and pay employees.

52.     Since the onset of the Kronos hack, Villa has failed to keep accurate track of the hours that Coulter, Johnson, and Similarly Situated Workers have worked.

53.     Instead, Villa has used various methods to estimate the number of hours Coulter, Johnson, and Similarly Situated Workers work in each pay period.

54.     For example, Villa issued paychecks based on scheduled hours or estimated hours, or simply duplicated paychecks from pay periods prior to the Kronos hack.

55.     As a result of Villa's failure to accurately track the actual hours worked each week, employees who were non-exempt and worked overtime were in many cases paid less than the hours they worked in the workweek, including overtime hours.

56.     Many employees were not even paid for all their non-overtime wages for hours worked in certain workweeks.

57.     Coulter and Johnson are two of the thousands of employees affected by these pay and timekeeping practices.

58.     Instead of paying Coulter and Johnson for the hours they actually worked (including overtime hours), Villa simply paid based on estimates of time or pay, or based upon arbitrary considerations **other than** Coulter and Johnson's actual hours worked and regular pay rates, in multiple workweeks.

59.     In some instances, Coulter and Johnson were paid portions of the overtime they worked, but the overtime rate they were paid was not at least 1.5 times the agreed rate of pay, including required adjustments for shift differentials and non-discretionary bonsuses.

60. In properly calculating and paying overtime to a non-exempt employee, the only metrics that are needed are: (1) the number of hours worked in a day or week, and (2) the employee's regular rate, taking into account shift differentials, non-discretionary bonuses, and other factors allowed under the law.

61. Villa knows it has to pay proper overtime premiums to non-exempt hourly and salaried employees.

62. Villa knows this because, prior to the Kronos hack, it routinely paid these workers for all overtime hours at the proper overtime rates.

63. Villa could have instituted any number of methods to accurately track and timely pay its employees for all hours worked.

64. Instead of accurately tracking hours and paying employees their overtime, Villa decided to arbitrarily pay these employees, without regard to the overtime hours they worked or the regular rates at which they were supposed to be paid.

65. Even to the extent it did pay some overtime to affected employees, Villa failed to take into account shift differentials and non-discretionary bonuses, such that the overtime premium Villa did pay, if any, was not the full overtime premium owed under the law based on the employees' agreed rate of pay.

66. It was feasible for Villa to have its employees and managers report accurate hours so they could be paid the full and correct amounts of money they were owed for the work they did for the company.

67. But Viilla chose not to do that.

68. In other words, Villa pushed the effects of the Kronos hack onto the backs of its most economically vulnerable workers, making sure that it kept the money it owed to

those employees in its own pockets, rather than take steps to make sure its employees were paid on time and in full for the work they did.

69.     Coulter and Johnson are just two of the many employees of Villa who had to shoulder the burden of this decision by Villa.

70.     Coulter was a non-exempt hourly employee of Villa.

71.     Coulter regularly worked over 40 hours per week for Villa.

72.     Coulter's normal, pre-Kronos hack hours are reflected in Villa's records.

73.     Since the Kronos hack, Villa has not paid Coulter for her actual hours worked each week.

74.     Since the hack took place, Villa has not been accurately recording the hours worked by Coulter and its other workers.

75.     Even when Villa has issued payment to Coulter for any overtime, the overtime is not calculated based on Coulter's regular rates, as required by federal law.

76.     Johnson was a non-exempt hourly employee of Villa.

77.     Johnson regularly worked over 40 hours per week for Villa.

78.     Johnson's normal, pre-Kronos hack hours are reflected in Villa's records.

79.     Since the Kronos hack, Villa has not paid Johnson for their actual hours worked each week.

80.     Since the hack took place, Villa has not been accurately recording the hours worked by Johnson and its other workers.

81.     Even when Villa has issued payment to Johnson for any overtime, the overtime is not calculated based on Johnson's regular rates, as required by federal law.

82.     Villa was aware of the overtime requirements of the FLSA.

83.     Villa nonetheless failed to pay the full overtime premium owed to certain non-exempt hourly and salaried employees, such as Coulter and Johnson.

84.     Villa's failure to pay overtime to these non-exempt workers was, and is, a willful violation of the FLSA.

85.     The full overtime wages owed to Coulter, Johnson, and the Similarly Situated Workers became "unpaid" when the work for Villa was done—that is, on Coulter, Johnson, and the Similarly Situated Workers' regular paydays. *E.g.*, *Martin v. United States*, 117 Fed. Cl. 611, 618 (2014); *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993); *Cook v. United States*, 855 F.2d 848, 851 (Fed. Cir. 1988); *Olson v. Superior Pontiac–GMC, Inc.*, 765 F.2d 1570, 1579 (11th Cir.1985), *modified*, 776 F.2d 265 (11th Cir.1985); *Atlantic Co. v. Broughton*, 146 F.2d 480, 482 (5th Cir.1944); *Birbalas v. Cuneo Printing Indus.*, 140 F.2d 826, 828 (7th Cir.1944).

86.     At the time Villa failed to pay Coulter, Johnson, and the Similarly Situated Workers in full for their overtime hours by their regular paydays, Villa became liable for all prejudcment interest, liquidated damages, penalties, and any other damages owed under the law.

87.     In other words, there is no distinction between late payment and nonpayment of wages under the law. *Biggs v. Wilson*, 1 F.3d 1537, 1540 (9th Cir.1993).

88.     Even if Villa made any untimely payment of unpaid wages due and owing to Coulter, Johnson, or the Similarly Situated Workers, any alleged payment was not supervised by the Department of Labor or any court.

89.     The untimely payment of overtime wages, in itself, does not resolve a claim for unpaid wages under the law. *See, e.g.*, *Seminiano v. Xyris Enterp., Inc.*, 602 Fed.Appx. 682,

683 (9th Cir. 2015); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-54 (11th Cir. 1982).

90.    Nor does the untimely payment of wages, if any, compensate workers for the damages they incurred due to Villa's acts and omissions resulting in the unpaid wages in the first place.

91.    Coulter, Johnson, and the Similarly Situtated Workers remain uncompensated for the wages and other damages owed by Villa under federal law.

### COLLECTIVE ACTION ALLEGATIONS

92.    Coulter and Johnson incorporate all other allegations.

93.    Numerous individuals were victimized by Villa's patterns, practices, and policies, which are in willful violation of the FLSA.

94.    Based on their experiences and tenure with Villa, Coulter and Johnson are aware that Villa's illegal practices were imposed on the FLSA Collective.

95.    The FLSA Collective members were not paid their full overtime premiums for all overtime hours worked.

96.    These employees are victims of Villa's unlawful compensation practices and are similarly situated to Coulter and Johnson in terms of the pay provisions and employment practices at issue in the collective in this lawsuit.

97.    The workers in the FLSA Collective were similarly situated within the meaning of the FLSA.

98.    Any differences in job duties do not detract from the fact that these FLSA non-exempt workers were entitled to overtime pay.

99.     Villa's failure to pay overtime compensation at the rates required by the FLSA result from generally applicable, systematic policies, and practices, which are not dependent on the personal circumstances of the FLSA Collective members.

100.    The FLSA Collective should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

CLASS ACTION ALLEGATIONS—ILLINOIS CLASS

101.    Coulter and Johnson incorporate all other allegations.

102.    The illegal practices Villa imposed on Coulter were likewise imposed on the Illinois Class members.

103.    Numerous other individuals who worked for Villa were not properly compensated for all hours worked, as required by Illinois law.

104.    The Illinois Class is so numerous that joinder of all members of the class is impracticable.

105.    Villa imposed uniform practices and policies on Coulter and the Illinois Class members regardless of any individualized factors.

106.    Based on her experience and tenure with Villa, as well as coverage of the Kronos hack, Coulter is aware that Villa's illegal practices were imposed on the Illinois Class members.

107.    Illinois Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

108.    Villa's failure to pay wages and overtime compensation in accordance with Illinois law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Illinois Class members.

109. Coulter's experiences are therefore typical of the experiences of the Illinois Class members.

110. Coulter has no interest contrary to, or in conflict with, the members of the Illinois Class. Like each member of the proposed class, Coulter has an interest in obtaining the unpaid wages and other damages owed under the law.

111. A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

112. Absent this action, many Illinois Class members likely will not obtain redress of their injuries, and Villa will reap the unjust benefits of violating Illinois law.

113. Furthermore, even if some of the Illinois Class members could afford individual litigation against Villa, it would be unduly burdensome to the judicial system.

114. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

115. The questions of law and fact common to each of the Illinois Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    a.    Whether the Illinois Class members were not paid overtime at 1.5 times their regular rate of pay for hours worked in excess of 40 in a workweek;

    b.    Whether Villa's failure to pay overtime at the rates required by law violated the IMWL; and

    c.    Whether Villa failed to pay the Illinois class members at their agreed upon rates of pay, as required by the IWPCA.

116.    Coulter's claims are typical of the Illinois Class members. Coulter and the Illinois Class members have all sustained damages arising out of Villa's illegal and uniform employment policies.

117.    Coulter knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

118.    Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

**CLASS ACTION ALLEGATIONS—MICHIGAN CLASS**

119.    Coulter and Johnson incorporate all other allegations.

120.    The illegal practices Villa imposed on Johnson were likewise imposed on the Michigan Class members.

121.    Numerous other individuals who worked for Villa were not properly compensated for all hours worked, as required by Michigan law.

122.    The Michigan Class is so numerous that joinder of all members of the class is impracticable.

123.    Villa imposed uniform practices and policies on Johnson and the Michigan Class members regardless of any individualized factors.

124.    Based on her experience and tenure with Villa, as well as coverage of the Kronos hack, Johnson is aware that Villa's illegal practices were imposed on the Michigan Class members.

125.    Michigan Class members were all not paid proper overtime when they worked in excess of 40 hours per week.

126.     Villa's failure to pay wages and overtime compensation in accordance with Michigan law results from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Michigan Class members.

127.     Johnson's experiences are therefore typical of the experiences of the Michigan Class members.

128.     Johnson has no interest contrary to, or in conflict with, the members of the Michigan Class. Like each member of the proposed class, Johnson has an interest in obtaining the unpaid wages and other damages owed under the law.

129.     A class action, such as this one, is superior to other available means for fair and efficient adjudication of the lawsuit.

130.     Absent this action, many Michigan Class members likely will not obtain redress of their injuries, and Villa will reap the unjust benefits of violating Michigan law.

131.     Furthermore, even if some of the Michigan Class members could afford individual litigation against Villa, it would be unduly burdensome to the judicial system.

132.     Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

133.     The questions of law and fact common to each of the Michigan Class members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

      a.  Whether Johnson and the Michigan Class members were paid at least the minimum wage for each hour worked;

      b.  Whether Johnson and the Michigan Class members were paid overtime at least 1.5x their regular rate of pay for hours worked in excess of 40 in a workweek;

c.  Whether Villa's failure to pay Johnson and the Michigan Class members' wages at the rates required by law violated Michigan law; and

d.  Whether Villa failed to make and provide to Johnson and the Michigan Class members the wage statements required under Michigan law.

134.  Johnson's claims are typical of the Michigan Class members. Johnson and the Michigan Class members have all sustained damages arising out of Villa's illegal and uniform employment policies.

135.  Johnson knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

136.  Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

### FIRST CAUSE OF ACTION—OVERTIME VIOLATIONS OF THE FLSA AS TO COULTER, JOHNSON, AND THE FLSA COLLECTIVE

137.  Coulter and Johnson incorporate each other allegation.

138.  By failing to pay Coulter, Johnson, and the FLSA Collective members overtime at 1.5 times their regular rates, Villa violated the FLSA. 29 U.S.C. § 207(a).

139.  Villa owes Coulter, Johnson, and the FLSA Collective members overtime for all hours worked in excess of 40 in a workweek, at a rate of at least 1.5 times their regular rates of pay.

140.  Villa owes Coulter, Johnson, and the FLSA Collective members the difference between the rate actually paid for overtime, if any, and the proper overtime rate.

141.    Likewise, Villa owes Coulter, Johnson, and the FLSA Collective members their agreed-upon rates of pay for all hours worked up to and including 40 each week in which they worked over 40 hours in the week, but were not paid in full for all hours.

142.    Villa knowingly, willfully, or in reckless disregard carried out this illegal pattern and practice of failing to pay the FLSA Collective members overtime compensation.

143.    Because Villa knew, or showed reckless disregard for whether, their pay practices violated the FLSA, Villa owes these wages for at least the past three years.

144.    Villa's failure to pay overtime compensation to Coulter, Johnson, and the FLSA Collective members was neither reasonable, nor was the decision not to pay overtime made in good faith.

145.    Because Villa's decision not to pay overtime was not made in good faith, Villa also owes Coulter, Johnson, and the FLSA Collective members an amount equal to the unpaid overtime wages as liquidated damages.

146.    Accordingly, Coulter, Johnson, and the FLSA Collective members are entitled to overtime wages under the FLSA in an amount equal to 1.5x their regular rates of pay, plus liquidated damages, attorney's fees, and costs.

### SECOND CAUSE OF ACTION—VIOLATIONS OF THE IMWL AS TO COULTER AND THE ILLINOIS CLASS

147.    Johnson and Coulter incorporate all other allegations.

148.    The conduct alleged in this Complaint violates the IMWL.

149.    At all relevant times, Villa was and is an "employer" within the meaning of the IMWL.

150.    At all relevant times, Villa employed Coulter and all the Illinois Class Members as "employees" within the meaning of the IMWL.

151.     The IMWL requires employers like Villa to pay overtime to all non-exempt employees.

152.     Coulter and the other Illinois Class Members are non-exempt employees who are entitled to be paid overtime for all overtime hours worked.

153.     Within the applicable limitations period, Villa had a policy and practice of failing to pay proper overtime to the Illinois Class Members for their hours worked in excess of 40 hours per week. IMWL, 820 ILCS § 105/4(a).

154.     As a result of Villa's failure to pay proper overtime to Coulter and the Illinois Class Members for work performed in excess of 40 hours in a workweek, Villa violated the IMWL.

155.     Coulter and the Illinois Class Members are entitled to overtime wages under the IMWL in an amount equal to 1.5 times their rates of pay, plus interest, attorneys' fees, costs, and all other damages allowed under the IMWL. IMWL, 820 ILCS § 105/12.

156.     Interest under the IMWL is calculated as 2% of the amount of the unpaid wages for each month following the date of the unpaid wages until paid for each unpaid employee.

### THIRD CAUSE OF ACTION—VIOLATIONS OF THE IWPCA AS TO COULTER AND THE ILLINOIS CLASS

157.     Johnson and Coulter incorporate all other allegations.

158.     The conduct alleged in this Complaint violates the IWPCA.

159.     At all relevant times, Villa was and is an "employer" within the meaning of the IWPCA.

160.     At all relevant times, Villa employed Coulter and all other Illinois Class Members as "employees" within the meaning of the IWPCA.

- 18 -

161.    The IWPCA requires employers like Villa to pay workers at their agreed upon rates of pay.

162.    Villa had the obligation under the IWPCA to pay workers at their agreed upon rates of pay regardless of the basis of calculation. IWPCA, 820 ILCS § 115/3.

163.    Villa violated the IWPCA by failing to compensate Coulter and the Illinois Class Members for all hours worked in Illinois at their agreed upon rates of pay.

164.    Villa was required to pay workers their wages and final compensation within the time allowed by the IWPCA. IWPCA, 820 ILCS § 115/4.

165.    Villa violated the IWPCA by failing to pay Coulter and the Illinois Class Members their wages and final compensation within the time required under the IWPCA.

166.    Under the IWPCA, Coulter and the Illinois Class Members are entitled to recover their unpaid wages, final compensation, and wage supplements, plus interest, attorneys' fees, costs, and all other damages allowed under the IWPCA. IWPCA, 820 ILCS § 115/14.

167.    Interest under the IWPCA is calculated as 2% of the amount of the underpayment for each month following the date of the underpayment until paid for each unpaid employee.

**FOURTH CAUSE OF ACTION— VIOLATIONS OF THE MWOWA
AS TO JOHNSON AND THE MICHIGAN CLASS**

168.    Johnson and Coulter incorporate all other allegations.

169.    The conduct alleged in this Complaint violates the MWOWA. MICH. COMP. LAWS § 408.411 *et seq*.

170.    At all relevant times, Villa has been an "employer" within the meaning of the MWOWA. MICH. COMP. LAWS § 408.412(d).

171.   At all relevant times, Villa employed Johnson and the Michigan Class members as "employees" within the meaning of the MWOWA. MICH. COMP. LAWS § 408.412(e).

172.   The MWOWA requires an employer like Villa to pay employees at a rate no less than the minimum wage for each hour worked. MICH. COMP. LAWS §§ 408.413, 408.414.

173.   As a result of Villa's failure to pay Johnson and the Michigan Class at a rate no less than the minimum wage for all hours worked, Villa violated the MWOWA.

174.   The MWOWA requires an employer like Villa to pay overtime to all non-exempt employees. MICH. COMP. LAWS §§ 408.413, 408.414a(a).

175.   Johnson and the other Michigan Class members are non-exempt employees who are entitled to be paid overtime for all hours worked over 40 in a workweek at a rate of no less than 1.5x their regular rate. MICH. COMP. LAWS § 408.414(a).

176.   Within the applicable limitations period, Villa had a policy and practice of failing to pay proper overtime to Johnson and the Michigan Class members for their hours worked in excess of 40 hours per week.

177.   As a result of Villa's failure to pay proper overtime to Johnson and the Michigan Class members for work performed in excess of 40 hours in a workweek, Villa violated the MWOWA.

178.   The MWOWA requires an employer like Villa to make and provide employees with accurate wage statements each pay period. MICH. COMP. LAWS § 408.417.

179.   Within the applicable limitations period, Villa had a policy and practice of failing to make and provide accurate wage statements required by the MWOWA.

180.    As a result of Villa's failure to pay proper overtime to keep the records required by the MWOWA, Villa violated the MWOWA.

181.    Johnson and the Michigan Class members are entitled to recover their unpaid wages, liquidated damages in an amount equal to unpaid wages, attorneys' fees, costs, and all other legal and equitable relief provided under the MWOWA. MICH. COMP. LAWS § 408.419(a).

### RELIEF SOUGHT

Coulter and Johnson pray for judgment against Villa as follows:

a.    For an order certifying a collective action for the FLSA claims;

b.    For an order certifying a class action for the Illinois law claims;

c.    For an order certifying a class action for the Michigan law claims;

d.    For an order finding Villa liable for violations of federal wage laws with respect to Coulter, Johnson, and all FLSA Collective members covered by this case;

e.    For an order finding Villa liable for violations of Illinois wage laws with respect to Coulter and all Illinois Class members covered by this case;

f.    For an order finding Villa liable for violations of Michigan wage laws with respect to Johnson and all Michigan Class members covered by this case;

g.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under federal wage laws to Coulter, Johnson, and all FLSA Collective members covered by this case;

h.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Illinois wage laws to Coulter and all Illinois Class members covered by this case;

i.    For a judgment awarding all unpaid wages, liquidated damages, and penalties under Michigan wage laws to Johnson and all Michigan Class members covered by this case;

j.      For an equitable accounting and restitution of wages due to Coulter, Johnson, and all FLSA Collective, Illinois Class, and Michigan Class members members covered by this case;

k.      For a judgment awarding attorneys' fees to Coulter, Johnson, and all FLSA Collective, Illinois Class, and Michigan Class members covered by this case;

l.      For a judgment awarding costs of this action to Coulter, Johnson, and all FLSA Collective, Illinois Class, and Michigan Class members covered by this case;

m.      For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law to Coulter, Johnson, and all FLSA Collective, Illinois Class, and Michigan Class members covered by this case;

n.      For an order awarding 2% monthly interest on all overtime compensation due to Coulter and all Illinois Class Members covered by this case, from the date the wages were due until paid;

o.      For an order awarding 2% monthly interest on all overtime compensation due to Coulter and all Illinois Class Members covered by this case, from the date the underpayments were due until paid; and

p.      For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

*/s/ Matthew S. Parmet*

By: _____

**Matthew S. Parmet**
N.D. Ill. Bar # 24069719 (TX)
**PARMET PC**
3 Riverway, Ste. 1910
Houston, TX 77056
phone 713 999 5228
matt@parmet.law

**Attorneys for Plaintiff**